806 P.2d 1385

**STATE OF WASHINGTON (Charlotte Lee Underwood), Petitioner–Appellee,**

v.

**Gayle Maylend YOUNG, Respondent–Appellant.**

**No. 1 CA–CV 89–334.**

Court of Appeals of Arizona, Division 1, Department A.

Feb. 21, 1991.

**338**

Fuller & Stowell, P.C. by Randal L. Stowell, Mesa, for respondent-appellant.

Grant Woods, Atty. Gen. by Mary Lou Bolton, Asst. Atty. Gen., Phoenix, for petitioner-appellee.

## OPINION

TAYLOR, Presiding Judge.

Gayle Maylend Young ("Young") appeals from a judgment entered in favor of the State of Washington ("Washington") ordering Young to reimburse Washington for Aid for Families with Dependent Children (AFDC) payments of $8,065.00 paid on behalf of his two children. The issue on appeal is whether a state may use a Uniform Reciprocal Enforcement of Support Act (URESA) [1] petition to obtain reimbursement from a non-custodial parent for AFDC payments made for his minor children despite a domestic relations court order abating the non-custodial parent's child support obligation and prohibiting the custodial parent from collecting accrued child support arrearages until she allows the non-custodial parent his visitation rights. We conclude that the use of a URESA petition was proper under the facts of this case and affirm the judgment of the trial court.

## FACTS AND PROCEDURE BELOW

On September 23, 1976, the Maricopa County Superior Court entered an order pursuant to stipulation between Gayle M. Young and Charlotte Young a/k/a Charlotte Underwood ("Underwood") finding that Young was the natural father of Thomas Lee Young and Steven Frank Young. The court awarded custody of the children to Underwood, ordered Young to pay child support of $120.00 per month and allowed Young reasonable visitation with the children as specified in the order.

In November, 1978, Underwood moved with the children from the state of Arizona.

---

**1.** The Uniform Reciprocal Enforcement of Support Act, A.R.S. § 12–1651 *et seq.,* is now titled "Revised Uniform Reciprocal Enforcement of Support Act." It will be referred to herein by its familiar acronym, "URESA."

She did not inform Young of her whereabouts, but left word that she would not accept any further child support payments from him. Young did not send to the clerk of the court the child support due for the month of November, 1978 nor did he make any subsequent payments. By letter dated April 26, 1979, Young advised the clerk of the court that Underwood had left the state and had stated that she would not accept further child support payments.

Underwood subsequently applied for AFDC in the State of Washington. On March 8, 1984, Underwood executed an assignment of support rights to the Washington State Department of Social and Health Services as a condition of her receipt of AFDC.

On April 2, 1986, Young filed a Petition for Order to Show Cause Re: Contempt for Modification of Child Support. In the petition, Young alleged that since November, 1978, he had been deprived of the visitation ordered by the September 23, 1976 paternity order, and requested that his child support obligations be abated. Young mailed a copy of the petition and accompanying documents to Patricia V. Lane, a support enforcement officer with the Washington Department of Social and Health Services. On July 7, 1986, the domestic relations court entered its order finding Underwood in contempt for failing to comply with the visitation order, abating Young's child support obligations and suspending the payment of any arrearages to Underwood until she complied with the court order concerning Young's visitation privileges.

On October 18, 1988, the State of Washington filed a URESA petition requesting reimbursement of AFDC benefits expended for Young's minor children from April 1, 1984, through May 31, 1986. An order to show cause hearing was conducted in the Maricopa County Superior Court on March 28, 1989. At the hearing, Young argued that the July 7, 1986 order precluded Washington from recovering reimbursement of

the AFDC payments. Washington contended that Young had a court-ordered duty to support his children during the time for which reimbursement was sought and that he should be required to reimburse it for AFDC payments regardless of the July 7, 1986 order. The court entered judgment in favor of Washington in the amount of $8,065.00 and ordered Young to pay $75.00 per month through a wage assignment.

Young subsequently filed a motion for reconsideration arguing that URESA was only a supplemental remedy for enforcement of support orders and that orders issued by the URESA court should not affect or supersede any previous order of support. Young pointed out that Underwood would not have been entitled to bring a URESA action to collect child support from Young; therefore, he argued, Washington could not collect AFDC reimbursement in a URESA proceeding because it stood in no better position than Underwood. The court denied the motion for reconsideration. Young timely filed a notice of appeal.

## DISCUSSION

Young resided in Arizona when the paternity order was entered in 1976, and he has continued to reside in Arizona. Thus, pursuant to the choice of law provision of A.R.S. § 12–1656,[2] Arizona law governs in this case. We find that, pursuant to Arizona law, Washington was entitled to bring a URESA petition for reimbursement, and we therefore affirm the trial court's grant of Washington's petition.

### Duty of Support

■ The threshold question in a URESA proceeding is whether the respondent has a duty of support that can be enforced in a URESA action. URESA provides a remedy for enforcing an existing duty of sup-

2. A.R.S. § 12–1656 provides:
Duties of support applicable under this article are those imposed under the laws of any state where the obligor was present for the period

during which support is sought. The obligor is presumed to have been present in the responding state during the period for which support is sought until otherwise shown.

port;[3] it does not create any substantive rights nor does it provide an independent basis for imposing a duty. *Howard v. Richardson*, 161 Ariz. 460, 461, 778 P.2d 1356, 1357 (App.1989); *Tande v. Bongiovanni*, 139 Ariz. 346, 348, 678 P.2d 531, 533 (App.1984).

"Duty of support" is defined in A.R.S. § 12–1651 as:

> ... a duty of support whether imposed or imposable by law or by order, decree, or judgment of any court, whether interlocutory or final or whether incidental to an action for divorce, separation, separate maintenance, or otherwise and *includes the duty to pay arrearages of support past due and unpaid.* [Emphasis added.]

The emphasized language was added during the 1968 revisions of the act (adopted in Arizona in 1970), which were "designed to plug loopholes and cure defects in the enforcement procedure." Uniform Reciprocal Enforcement of Support Act (1968 Revised Act), Commissioners' Prefatory Note.

Young argues that Washington was not entitled to judgment in the URESA action because there was no duty of support to enforce. He maintains that the order of July 7, 1986, which abated his child support obligation and suspended payment to Underwood of arrearages until she complied with the visitation provision of the divorce court order, terminated his duty of support.

Young relies on *State ex rel. Arvayo v. Guerrero*, 21 Ariz.App. 173, 517 P.2d 526 (1974). In *Arvayo*, the divorce decree awarded custody of the minor children to the mother, granted the father reasonable visitation rights and ordered him to pay child support. The mother subsequently initiated a URESA action seeking reimbursement and support. Soon after the URESA petition was filed, the father filed in the divorce court an order to show cause regarding the mother's denial of his visitation rights. Before the URESA proceedings were concluded, the divorce court entered an order terminating the child support payments until the mother honored the father's visitation rights. The father later moved to dismiss the mother's URESA petition on the grounds that he had no duty to pay child support. The court dismissed the URESA petition.

On appeal, the *Arvayo* court noted that URESA is a means to enforce a duty of support and that the father's duty of support was governed by Arizona law. *Id.* at 175, 517 P.2d at 528. The court found that his duty of support was terminated by the court in the divorce action, and consequently held that the URESA court properly dismissed the mother's petition. The *Arvayo* court explained that the mother had no remedy under URESA unless there was a duty imposed upon the father that gave her a right to a remedy under the act. Because the divorce court had terminated the father's duty of support until visitation rights were honored, the mother had no right to a URESA remedy. *Id.* at 176, 517 P.2d at 529.

In a URESA case involving an underlying abatement order, we think that a distinction must be made between a petition for reimbursement brought by an errant parent and a petition for reimbursement brought by a state. On that basis, this case is distinguishable from *Arvayo*. In *Arvayo*, the URESA petition was initiated by the mother who was seeking current support and reimbursement. When the divorce court order terminated the father's duty of support until the mother honored visitation rights, the mother no longer had any right to enforce a duty of support. The court found that due to the abatement order in the divorce court, there was no duty imposed on the father which would give the errant mother a right to a URESA remedy.

Here, the URESA petition was initiated by Washington, the state which had expended public assistance payments. At the time the benefits were paid, Young had a court ordered duty to pay support pursuant to A.R.S. § 12–1656. When the mother applied for AFDC benefits, she assigned her right to enforce that duty to Washington. Washington then had the right to

---

**3.** A.R.S. § 12–1673 provides the statutory authorization for enforcement of the duty of support.

enforce Young's duty. The subsequent divorce court order explicitly terminated Young's duty of support to Underwood and suspended payment of arrearages to her. The order, however, did not affect Young's duty of reimbursement to Washington pursuant to the assignment. Washington had the right to seek a remedy under URESA to enforce the legal duty of support in force at the time the benefits were paid.

It is unclear from a review of *Arvayo* whether the "reimbursement" requested was for AFDC benefits expended by the initiating jurisdiction or for past payments due to the mother. It is also unclear whether the time period for which reimbursement was sought was prior to the order abating the duty to pay child support. To the extent that *Arvayo* could be read as precluding an action by a state for reimbursement of arrearages accrued before the abatement order, we would disagree with the result in *Arvayo*. Where an abatement order suspends reimbursement of accrued arrearages to an errant parent, as in this case, we do not believe that such an order should preclude a state that has expended public assistance from seeking reimbursement through a URESA petition.

Young also relies upon *Howard* and its holding that where a domestic relations court order stated that neither parent was under a duty to pay child support to the other, the father's previous duty to pay child support was terminated and a URESA petition could not be used by the mother to obtain child support or reimbursement. The *Howard* court noted with approval that "*Arvayo* held that a URESA petition may not impose a duty of support where a prior court order had terminated that duty." 161 Ariz. at 461–62, 778 P.2d at 1357–58.

We think that *Howard* is likewise distinguishable from this case. As in *Arvayo*, in *Howard* the URESA proceeding was initiated by the custodial mother who was seeking an order of support and apparently reimbursement for past support payments accumulating under the original support provision since the termination order. The

court found that the father's duty to pay support to the mother was terminated by the modified decree which stated that neither parent was under a duty to pay child support to the other. The *Howard* court agreed with the *Arvayo* reasoning that "there is no 'remedy' through a URESA petition where there is no 'right' (a duty of support)." *Howard* at 461, 778 P.2d at 1357 (quoting *Arvayo*, 21 Ariz.App. at 176, 517 P.2d at 529).

We believe the holdings in *Arvayo* and *Howard* to be applicable to cases wherein one parent seeks to enforce the duty of the other parent to pay child support despite a court order explicitly terminating the duty to pay support. Where the URESA petition involves a request by a state for AFDC reimbursements for payments made prior to an order of abatement, the duty of support owed to the state and the right of the state to bring the action survive.

■ Young argues that A.R.S. § 12–1657 acts as a limitation on Washington's right to bring the URESA action. A.R.S. § 12–1657 states:

> If a state or a political subdivision furnishes support to an individual obligee, it has the same right to initiate a proceeding under this article as the individual obligee for the purpose of securing reimbursement for support furnished and of obtaining continuing support.

Young maintains that Washington has only the same right as Underwood and because Underwood was precluded from bringing a URESA action of enforcement by the abatement and suspension order, Washington is likewise precluded. We agree with Washington that this provision grants standing to a state to use URESA and does not act as a procedural limitation to the state where a court order has suspended payment of arrearages to the custodial parent. Because Underwood assigned her rights to Washington prior to the abatement order and because A.R.S. § 12–1657 gives Washington standing to enforce the duty of support, it may properly seek reim-

bursement from Young by initiating a URESA petition.

*Public Policy*

■ Granting Washington's URESA petition in this case furthers the public policy of this state of maintaining fiscal integrity of public assistance programs and making parents, not taxpayers, responsible for their children by enforcing the legally imposed duty of support. This public policy is set forth in A.R.S. § 46–401:

> It is the public policy of this state that parents be responsible for the support of their dependent children in order to relieve or avoid the burden for support of their children on the general citizenry through public assistance programs.

URESA statutes were intended to further these significant public policies and must be liberally construed to carry them out.

Once the recipient parent assigns his or her rights to support to the state as a condition of AFDC eligibility, the duty of support is owed to the state. The relevant provision is codified in 42 U.S.C. § 656(a)(1):

> The support rights assigned to the State under section 602(a)(26) of this title ... shall constitute an obligation owed to such state by the individual responsible for providing such support. Such obligation shall be deemed for collection purposes to be collectible under all applicable state and local processes.

Once Underwood assigned her rights to Washington as a condition of accepting benefits (a requirement under § 602(a)(26) of the Social Security Act), Young's duty of support was owed to that state. Washington's right to those payments vested as each child support payment became due. *See Tande*, 139 Ariz. at 349, 678 P.2d at 534. The subsequent court order explicitly suspended Underwood's right to any child support payments or arrearages accrued until she honored Young's visitation rights, but did not affect Washington's vested right to enforce Young's obligation to it incurred prior to the abatement order.

*Doctrine of Necessaries*

Washington alternatively relies upon the doctrine of necessaries as a basis to seek reimbursement. It argues that this common law doctrine allows a third party to maintain a cause of action for necessaries provided to the child regardless of the amount of the obligation in the underlying child support order. Because we find that Washington has a statutory right to seek reimbursement under URESA statutes, we do not consider whether the doctrine of necessaries would apply to this case.

*General Statutory Duty of Support*

Washington also relies upon the general duty of support found in A.R.S. § 12–2451 [4] to bolster its argument that Young has a duty of support enforceable by a URESA petition. Because we find that Young has a court-ordered duty enforceable by a URESA action, we need not rely upon a general duty of support.

### CONCLUSION

Here, the trial court ruled that Young had a duty of support which gave the State of Washington the right to a URESA remedy. We agree. The domestic relations order terminated any duty of support owed to Underwood and suspended payment of arrearages to her until she complied with visitation rights. The order did not eradicate the father's duty of support owed to Washington which was in effect during the time for which reimbursement is being sought. Underwood assigned to Washington the right to enforce the duty of support as each payment became due. Pursuant to A.R.S. § 12–1657, Washington may enforce Young's duty to pay the arrearages by filing a URESA petition.

If a court finds a duty of support pursuant to A.R.S. § 12–1673, it may order the

---

**4.** A.R.S. § 12–2451 states:
Every man and woman shall have the duty to provide all reasonable support for his or her natural and adopted minor, unemancipated children, regardless of the presence or residence of the child in this state.

obligor to furnish support or reimbursement therefrom and subject the property of the obligor to the order. The trial court acted properly in granting the State of Washington reimbursement for the AFDC benefits paid and in ordering a wage assignment of Young.

We affirm the judgment in favor of the State of Washington and the denial of the motion for consideration.

CONTRERAS and LANKFORD, JJ., concur.